McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey  07962-2075
(973) 993-8100
Attorneys for Defendants, H.W. Heritage Inn of Mt. Laurel, Inc., Hilton Hotel Corporation and The Blackstone Group, L.P. a/k/a Blackstone Private Equity

By:  Edward J. DePascale

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| R.M.W., a minor, by his Guardian Ad Litem, STEVEN F. WOLFE; AMY E. WOLFE; STEVEN F. WOLFE, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>HOMEWOOD SUITES BY HILTON MT. LAUREL, HILTON HOTEL CORPORATION, *et al.*,<br><br>Defendants. | **Civil Action**<br><br>**Case No: 1:09-cv-00400(JHR)(AMD)**<br><br>Civil Action |

---

**REPLY BRIEF OF DEFENDANTS H.W. HERITAGE INN OF MT. LAUREL, INC., HILTON HOTEL CORPORATION AND THE BLACKSTONE GROUP, L.P. A/K/A BLACKSTONE PRIVATE EQUITY IN SUPPORT OF THEIR MOTION FOR AN ORDER GRANTING PARTIAL SUMMARY JUDGMENT (THEREBY DISMISSING THE CLAIMS OF AMY E. WOLFE AND STEVEN F. WOLFE IN THEIR ENTIRETY)**

---

EDWARD J. DEPASCALE
    *Of Counsel*

LOUIS A. UCCELLO
    *On the Brief*

## PRELIMINARY STATEMENT

Preliminarily, we note that plaintiffs' characterization of the subject incident as "near fatal" is misplaced. Without question, Mrs. Wolfe testified that she reached into R.M.F.'s mouth and retrieved a condom. Mrs. Wolfe did not engage in "emergent first aid" as plaintiffs argue in their opposition brief. Mrs. Wolfe did not need to perform the Heimlich maneuver or any CPR efforts. After the incident, Mrs. Wolfe disposed of the condom in the trash bin under the kitchen sink. She notified the hotel staff of the incident and then called Mr. Wolfe, who was on a drive-thru line waiting for his breakfast order. So uneventful was the incident that Mr. Wolfe testified that he remained at the drive through until his order was complete. He returned to the hotel and fed his children breakfast, while Mrs. Wolfe discussed the incident with hotel staff. At no point in time was 9-1-1 called. R.M.W. was not taken to an emergency room; rather, he was first taken to seek medical attention two weeks after the incident. The inactions of the Wolfe family following the incident clearly establish that this was not a near fatal incident as plaintiffs would like this Court to believe.

Furthermore, plaintiffs attempt to gain this Court's sympathy by discussing irrelevant facts, i.e., A.E.W.'s heart condition and emergency care she underwent completely unrelated to this event, must be ignored by this Court. Such an attempt to use sympathy to defeat summary judgment is improper and insignificant to the Court's determination here.

Despite the arguments set forth in plaintiffs' opposition, under the facts of this case, it remains clear that Mrs. Wolfe cannot establish that defendants' negligence caused death or serious physical injury to R.M.W.; and that she had a sensory and contemporaneous observation of the death or injury at the scene of the accident, as required by Portee. Since Mr. Wolfe's *per*

1

*quod* claim merely bootstraps Mrs. Wolfe's flawed claim, both claims must be dismissed as a matter of law.

## MRS. WOLFE CANNOT SUSTAIN HER CLAIM BECAUSE THE SUBJECT INCIDENT DID NOT RESULT IN EITHER "DEATH OR SERIOUS INJURY"

It is well-settled in New Jersey that in order to sustain her Portee claim, Mrs. Wolfe must establish that: (1) defendants' negligence caused the death of or serious physical injury to another; (2) the plaintiff shared a marital or intimate familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress as a result. See Portee, supra, 84 N.J at 101. The requirement of "death or serious injury," as well as physical proximity to the injured person and "sensory and contemporaneous observance," define the limitation on liability. Id. at 98. The Supreme Court in Portee clearly expressed its intent to limit claims of negligent infliction of emotional distress to only those involving "death or serious injury". The Court was, indeed, concerned with the "severity" of injury that forms the basis of the claims. Accordingly, the Court stated:

> The harm we have determined to be worthy of judicial redress is the trauma accompanying the observance of the death or serious injury of a loved one. ... We hold that the observation of either death or this type of serious injury is necessary to permit recovery. Since the sense of loss attendant to death or serious injury is typically not present following lesser accidental harm, perception of less serious harm would not ordinarily result in severe emotional distress. Thus, the risk of an extraordinary reaction to less serious injury is not sufficient to result in liability. To impose liability for any emotional consequence of negligent conduct would be unreasonable; it would also be unnecessary to protect a plaintiff's basic emotional stability. Therefore, a cause of action for emotional distress would require the perception of death or serious physical injury. [Emphasis added].

[See Portee, supra, 84 N.J. at 100-101].

2

Fundamentally, Portee claims are based on "the trauma of seeing a loved one suffer or die." Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 352 (App. Div.), 111 N.J. 654 (1988). Hence, only the most severe types of physical injuries will qualify. The serious injury referred to in Portee was watching a child being crushed to death by an elevator. Other types of "serious injury" recognized as worthy of judicial redress are similarly severe, often resulting in death. See e.g., Ortiz v. John D. Pittenger Builder, Inc., 382 N.J. Super. 552 (Law Div. 2004) (child burned to death in house explosion and resulting fire); Mansour v. Leviton Mftg. Co., Inc., 382 N.J. Super. 594 (App. Div. 2006) (child burned by hot liquid from wok that fell onto her); Eyrich for Eyrich v. Dam, 193 N.J. Super. 244 (App. Div. 1984) certif. denied, 97 N.J. 583 (1984) (five-year-old boy fatally mauled to death by leopard at circus held on school grounds).

As disturbing as the subject incident may have been for Mrs. Wolfe, there is absolutely no evidence of "death or serious injury" to R.M.W. The incident did not result in, for example, any life-threatening or disabling injuries to R.M.W. In fact, there was no physical injury sustained by R.M.W. whatsoever. Furthermore, he did not contract any infectious diseases as a result of the incident. Thus, R.M.W. did not sustain a serious injury or death, which is a requirement for Mrs. Wolfe to sustain her claim.

In their opposition brief, plaintiffs unsuccessfully attempt to argue that R.M.W. had a near fatal choking incident. The record, however, proves otherwise (as set forth above and in defendants' moving papers). Additionally, plaintiffs argue that Mrs. Wolfe discovered that "her baby son had ingested a stranger's bodily fluids and blood borne pathogens through his ingestion of a used condom." Such a position is not supported by any evidence in this case. Plaintiffs have not, and cannot, prove that the condom was used. Of course, plaintiffs' position in that regard is pure speculation. In any event, regardless of the state of the condom, the fact remains

3

that R.M.W. did not sustain any injury, let alone a serious injury, which is a requirement to sustain Mrs. Wolfe's claims.

Plaintiffs further attempt to support the serious injury requirement by arguing that R.M.W. required post-incident psychotherapy. They allege that after the incident, R.M.W. "pretty much stopped taking." They further argue that other skills, such as feeding skills and interaction, were affected. Indeed, R.M.W.'s psychotherapist has opined that the subject incident "could have impacted on these skills." See Certification of J. DeCarlo, Ex. D. Furthermore, R.M.W. began psychotherapy treatment six months after his incident. Plaintiffs also argue that the blood work R.M.W. underwent following the incident constitutes an injury. Indeed, plaintiffs are incorrect. Plaintiffs fail to cite a single case finding these types of "injuries" to meet the burden set forth by Portee.

Interestingly, plaintiffs ignore the following legal arguments, which are based upon New Jersey law and are contained in the moving papers:

> Fundamentally, Portee claims are based on "the trauma of seeing a loved one suffer or die." Wolfe v. State Farm Ins. Co., 224 N.J. Super. 348, 352 (App. Div.), 111 N.J. 654 (1988). Hence, only the most severe types of physical injuries will qualify. The serious injury referred to in Portee was watching a child being crushed to death by an elevator. Other types of "serious injury" recognized as worthy of judicial redress are similarly severe, often resulting in death. See e.g., Ortiz v. John D. Pittenger Builder, Inc., 382 N.J. Super. 552 (Law Div. 2004) (child burned to death in house explosion and resulting fire); Mansour v. Leviton Mftg. Co., Inc., 382 N.J. Super. 594 (App. Div. 2006) (child burned by hot liquid from wok that fell onto her); Eyrich for Eyrich v. Dam, 193 N.J. Super. 244 (App. Div. 1984) certif. denied, 97 N.J. 583 (1984) (five-year-old boy fatally mauled to death by leopard at circus held on school grounds)…
>
> Those cases recognizing bystander claims have involved instances where the plaintiff was present at the same time and place with a family member when the injury or death occurred. See e.g., Eyrich for Eyrich v. Dam, 193 N.J. Super. 244 (App. Div. 1984) certif.

4

> denied, 97 N.J. 583 (1984) (plaintiff was at the scene, attempted to rescue boy from fatal leopard attack, and observed victim bleeding profusely from the head and neck); see also Dunphy v. Gregor, 136 N.J. 99, 107 (1994) (wife standing five feet away from husband observed vehicle fatally strike him). Recently, in Jablonowska v. Suther, 194 N.J. 91 (2008) the Supreme Court reaffirmed the requirement of "sensory, contemporaneous perception" as a necessary component of a Portee-based claim.
>
> [Moving Brief, p. 9-11.]

Instead, plaintiffs rely upon non-binding decisions from Iowa and Nebraska to argue that this Court should steer away from well-settled New Jersey law and (for some inexplicable reason) impose a lessened burden on the plaintiffs here. Those cases do not interpret New Jersey law and are irrelevant here. They provide no guidance to this Court's determination here.

Plaintiffs' opposition is devoid of any meaningful legal argument in opposition to the above-quoted arguments from the moving papers. Indeed, plaintiffs cannot properly oppose the arguments since R.M.W.'s incident in no way gives rise to a valid Portee claim. Plaintiffs' obvious avoidance of the legal issues presented here is further reinforced when they write: "It is respectfully submitted that the common law of this state has evolved to a point where this Court must recognize a valid cause of action for the emotional distress suffered by Mrs. Wolfe..." Opposition Brief, p. 22. Indeed, plaintiffs offer no cases to support that position. Instead, plaintiffs spend several pages detailing the "familial relationship" prong of the Portee analysis – an issue not raised in the moving papers and one of no significance to this motion.

Relying on the matter of Williamson v. Waldman, 291 N.J. Super. 600 (App. Div. 1196), *affirmed and modified*, 150 N.J. 232 (1997), plaintiffs argue that Mrs. Wolfe's claim is sustainable since she alleges emotional distress based upon fear of exposure to infectious disease. Without question, plaintiffs' reliance upon the Williamson decision is completely misplaced. Williamson, and related cases, deal with medical monitoring, or medical surveillance, of the

5

plaintiff who was possibly exposed to disease (not the plaintiff's parents' claims).  Williamson dealt with a plaintiff who was *personally* pricked with a lancet (a device used to prick fingers when obtaining blood samples) and later alleged emotional distress as a result of same.  Here, defendants are not moving for summary judgment on R.M.W.'s claim; rather, defendants seek partial summary judgment as to Mrs. Wolfe's Portee claim and Mr. Wolfe's related claim.  The plaintiff in Williamson was not pursuing a Portee claim; rather she sought damages for emotional distress related to an incident (being pricked with a lancet) that she *personally* experienced (as opposed to her child).  Thus, the Williamson matter is clearly distinguishable from Mrs. Wolfe's claims, which sound in different and distinct legal theories.

Here, Mrs. Wolfe's burden is greater that the plaintiff in Williamson; Mrs. Wolfe must establish that: (1) defendants' negligence caused the death of or serious physical injury to another; (2) the plaintiff shared a marital or intimate familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress as a result.  Indeed, she has failed to meet her burden in that regard.

In sum, Mrs. Wolfe alleges that she observed her son choking for a brief moment and retrieved a condom from his mouth.  By contrast, the plaintiff in Portee was a mother who had actually witnessed her son as he was "wedged" between the elevator door and shaft wall, and who later died from his injuries.  **The Court noted that "the plaintiff watched as her son moaned, cried out and flailed his arms…He died while still trapped, his mother a helpless observer."**  Portee, supra, 84 N.J. at 91 (emphasis added).  In fact, the mother was in such close proximity to the incident that she had to be restrained from touching her son so as not to interfere with the rescue attempts.  Ibid.  It is evident that our Supreme Court, in the Portee matter,

6

explicitly intended to permit bystander claims only where the plaintiff observes "death or serious injury." Albeit a disturbing allegation, R.M.W.'s incident in no way gives rise to a Portee claim.

Since R.M.W. did not sustain any serious injury or death, Mrs. Wolfe, of course, cannot establish that she was a witness "at the scene of the accident causing death or serious injury," which is required in order for her to recover for emotional distress. See Portee, supra, 84 N.J. at 99.

Based on the foregoing, recognition of Mrs. Wolfe's ungrounded Portee claim here would contradict New Jersey's well-settled intention to limit bystander liability claims to those incidents involving horrific events that result in "death or serious injury." Additionally, since Mr. Wolfe's sole claim (a *per quod* claim) merely bootstraps Mrs. Wolfe's ungrounded Portee claim, it is deficient as a matter of law and should be dismissed by this Court.

## CONCLUSION

For all of the foregoing reasons, defendants H.W. Heritage Inn of Mt. Laurel, Inc., Hilton Hotel Corporation and The Blackstone Group, L.P. a/k/a Blackstone Private Equity respectfully request that this Court enter an Order granting them partial summary judgment thereby dismissing each and every claim asserted against them by Mrs. Wolfe, individually, and Mr. Wolfe, individually.

                            Respectfully submitted,

                            **McElroy, Deutsch, Mulvaney & Carpenter, LLP**

                            By: _____
                                 Edward J. DePascale

Dated: May 4, 2010